UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT WILSON, o.b.o.
L.W., a Minor,

       Plaintiff,                                       Hon. Janet T. Neff

v.                                                                Case No. 1:09 CV 46

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Plaintiff's Notice of Application for Attorneys Fees and Costs Pursuant to the Equal Access to Justice Act</u>, (dkt. #20), and <u>Plaintiff's Corrected Notice of Application for Attorneys Fees and Costs Pursuant to the Equal Access to Justice Act</u>, (dkt. #21). Plaintiff's counsel seeks $3,101.85 in fees and costs, as detailed in Plaintiff's applications. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motions be **granted in part and denied in part** as detailed herein.

        Pursuant to the Equal Access to Justice Act (EAJA), the prevailing party in an action seeking judicial review of a decision of the Commissioner of Social Security may apply for an award of fees and costs incurred in bringing the action. *See* 28 U.S.C. § 2412(d)(1)(A). While a prevailing party is not simply entitled, as a matter of course, to attorney fees under the EAJA, *see United States v. 0.376 Acres of Land*, 838 F.2d 819, 825 (6th Cir. 1988), fees and costs are to be awarded unless the Court finds that the Commissioner's position was "substantially justified" or that "special

circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *Damron v. Commissioner of Social Security*, 104 F.3d 853, 855 (6th Cir. 1997).

The burden rests with the Commissioner to establish that his position was substantially justified, *see Secretary, United States Department of Labor v. Jackson County Hospital*, 2000 WL 658843 at *3 (6th Cir., May 10, 2000), defined as "justified, both in fact and in law, to a degree that could satisfy a reasonable person." *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989). However, the fact that the Commissioner's decision was found to be supported by less than substantial evidence "does not mean that it was not substantially justified." *Bates v. Callahan*, 1997 WL 588831 at *1 (6th Cir., Sept. 22, 1997); *see also*, *Couch v. Sec'y of Health and Human Services*, 749 F.2d 359, 359 (6th Cir. 1984).

As detailed previously, the Commissioner's decision was reversed and this matter remanded for further factual findings because the ALJ failed to properly evaluate the opinions expressed by Plaintiff's treating physician. As the Court observed, "the ALJ's rationale for discounting Jessica Duguid's opinion is not supported by substantial evidence and evinces a painful oversimplification of Plaintiff's impairments, the limitations resulting therefrom, and the efficacy of the various treatment strategies employed to assist Plaintiff." The ALJ also improperly assessed the extent to which Plaintiff was limited by his impairments, relying on certain opinions and observations that enjoy little (if any) support in the record. In this respect, the Court observed

> In arriving at his conclusions regarding Plaintiff's level of impairment in these particular domains, the ALJ expressly relied on the opinions of Dr. William Schirado and Dr. Thomas Ippel. The ALJ's reliance on their opinions, however, is misplaced.
>
> Dr. Schirado never examined Plaintiff, but instead merely reviewed the record (as it then existed) and rendered an opinion as to Plaintiff's limitations in the aforementioned domains of functioning. (Tr. 307-

13).  The Court first notes that Dr. Schirado expressed his opinions in December 2005.  Thus, the doctor's opinions fail to take into account the wealth of evidence after that date concerning Plaintiff's impairments.  Such, by itself, casts serious doubt as to the weight that Dr. Schirado's opinions should have been accorded.  Moreover, a review of Dr. Schirado's report reveals that the specific findings articulated in his report are inconsistent with his conclusions as to Plaintiff's degree of functional limitation. Furthermore, Dr. Schirado failed to take into consideration Plaintiff's diagnosis of static encephalopathy, a disorder which the ALJ expressly found Plaintiff suffered.  The failure by Dr. Schirado to consider that Plaintiff suffers from a degenerative brain disease cannot be described as harmless or insignificant.

Dr. Ippel testified at the administrative hearing as a medical expert.  The doctor testified that with respect to the domain of interacting and relating with others, Plaintiff experienced "marked" limitations. (Tr. 466).  When asked to identify what would justify a finding that Plaintiff suffered an "extreme" limitation in this domain, Dr. Ippel testified that he "would be looking for difficulties getting along with peers as well as authority." (Tr. 469).  As the medical record detailed above makes abundantly clear, Plaintiff has a lengthy history of difficulty "getting along with peers as well as authority."  Thus, Dr. Ippel's testimony in this regard appears to contradict his previously stated conclusion, which the ALJ adopted.

Dr. Ippel also testified that his opinions were based in part on his determination that Plaintiff's "getting into difficulty, violating the judge's orders and being sent to the youth home, is mostly a voluntary thing, something that he chooses to do." (Tr. 473).  The doctor is correct that Plaintiff's conduct was voluntary in the sense that Plaintiff was not under hypnosis or otherwise "controlled by" another person or entity.  However, the doctor's response merely begs the question that is at the heart of this matter, namely *why* Plaintiff chose to engage in the behaviors at issue and the extent to which Plaintiff's various impairments impacted his decision to engage in such behaviors.  Dr. Ippel's failure to address these underlying issues casts serious doubt on the weight that should be afforded his observations.

Finally, when asked about Plaintiff's diagnosis of static encephalopathy and its impact on Plaintiff's "psychological status," Dr. Ippel testified that he has *never* had any contact or experience with static encephalopathy. (Tr. 470).  The doctor further testified

that Plaintiff's father possessed "much more knowledge" about the condition than did he. (Tr. 470). The purpose of questioning a medical *expert* at an administrative hearing is to elicit from the expert medical knowledge and expertise beyond that possessed by lay people so as to obtain a more complete and accurate assessment of the claimant's impairments and the limitations resulting therefrom. Rather than provide expert testimony about Plaintiff's diagnosis of a brain injury, Dr. Ippel simply conceded that Plaintiff's father was more knowledgeable on the subject. In this respect, the Court notes that Plaintiff's father testified that if "left unsupervised, I have no doubt that [Plaintiff] will make, consistently make poor choices every time." (Tr. 475). This testimony is consistent with the opinion expressed by Jessica Duguid, who also apparently understands static encephalopathy to a much greater degree than the ALJ's alleged medical expert. Dr. Ippel's stated ignorance concerning the degenerative brain disease from which Plaintiff suffers cannot be described as harmless or insignificant.

The medical evidence detailed above, including but certainly not limited to Jessica Duguid's opinions, is in stark contrast to the opinions rendered by Drs. Schirado and Ippel. The Court recognizes that, generally speaking, the ALJ is entitled to weigh and resolve conflicting evidence. However, considering the serious deficiencies discussed above with the opinions expressed by Drs. Schirado and Ippel, as well as the more than substantial amount of medical evidence contradicting these doctors' opinions, the Court is compelled to conclude that the ALJ's determination as to Plaintiff's limitation in the three domains of functioning identified above is not supported by substantial evidence.

Having failed to comply with the relevant legal standard applicable to evaluating the opinions of treating physicians and then basing his decision on other opinions which enjoy little (if any) support in the record, the Commissioner cannot reasonably assert that his position is legally justified. In sum, the Court finds that the ALJ's decision was not substantially justified. However, as detailed below the Court finds that counsel's request is excessive.

In his application, Plaintiff's counsel seeks an award of $3,101.85. Specifically, counsel asserts that he expended 18.3 hours on this matter for which he seeks an hourly rate of

-4-

$169.50. While the Court finds the number of hours expended by counsel to be reasonable, the hourly rate upon which counsel's claim is based is inappropriate. The relevant statute provides that "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). As the Court finds neither circumstance present, the undersigned recommends that counsel's award be based upon an hourly rate of $125. Accordingly, the undersigned recommends that counsel be awarded fees and costs in the amount of $2,287.50 ($125 multiplied by 18.3 hours).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Plaintiff's Notice of Application for Attorneys Fees and Costs Pursuant to the Equal Access to Justice Act</u>, (dkt. #20), and <u>Plaintiff's Corrected Notice of Application for Attorneys Fees and Costs Pursuant to the Equal Access to Justice Act</u>, (dkt. #21), each be **granted in part and denied in part**. Specifically, the undersigned recommends that counsel be awarded fees and costs in the amount of $2,287.50.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                                                     Respectfully submitted,

Date: September 1, 2010                                            /s/ Ellen S. Carmody
                                                                                                ELLEN S. CARMODY
                                                                                                United States Magistrate Judge